IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DENNIS J. ALTER and WILLIAM A. ROSOFF,<br><br>      Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION; FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for ADVANTA BANK CORP.; and FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:13-CV-456 TS |

  This matter is before the Court on Defendant Federal Deposit Insurance Corporation's ("FDIC") [1] motions to dismiss or transfer. Defendant FDIC has filed two motions in its corporate capacity ("FDIC-C") and one motion in its capacity as receiver ("FDIC-R") for Advanta Bank Corporation ("Advanta").[2] For the reasons discussed more fully below, the Court will deny Defendants' motions to dismiss or transfer and will stay this matter pending resolution of the parties' claims before the United States District Court for the Eastern District of Pennsylvania.

---

  [1] Defendant FDIC moves for dismissal in multiple capacities. For this reason, the FDIC is referred to throughout this memorandum as FDIC-C and FDIC-R. The two entities jointly will be referred to either as FDIC or Defendants.

  [2] *See* Docket Nos. 19, 36, 38.

1

I.  BACKGROUND

Plaintiffs Dennis Alter and William A. Rosoff are former officers and managing directors of Advanta.  Advanta is a bank that was incorporated under Utah law.  Plaintiffs allege that Advanta was headquartered out of, and maintained its core of operations in, Draper, Utah.  Plaintiffs reside in Pennsylvania.  Defendant FDIC is an agency chartered by federal law with, among other duties, administering the Federal Deposit Insurance Act and the federal bank deposit insurance system.  FDIC-R was appointed as receiver for Advanta on or about March 19, 2010.  This action arises from Advanta's financial failure.

The parties present conflicting versions of the facts that give rise to this dispute.  In their Amended Complaint, Plaintiffs allege that the FDIC destroyed Advanta and has "embarked on a shameful campaign to blame [Plaintiffs] for the failure of [Advanta]."[3]  Defendants contend that Plaintiffs hastened Advanta's downfall by increasing annual percentage rates on Advanta's credit card customers, causing many of those customers to close their accounts and others to default.

Prior to 2007, Advanta was a leading issuer of credit cards to small businesses.  The financial downturn in 2007 had a negative impact on Advanta's small business customers.  As a result, Advanta's customers began to default on their credit obligations.  Such defaults, in turn, had a negative effect on Advanta.

In 2008, Plaintiffs expanded Advanta's repricing practices to "reflect the rapidly increasing risk in its portfolio."[4]  Repricing is an industry term that simply signifies the action

---

[3] Docket No. 24.

[4] Docket No. 31, at 5 (citing Docket No. 24, at 11–14).

taken by a creditor of raising the interest rate for a customer whose credit status has deteriorated. According to Plaintiffs, in 2008 alone, repricing generated over $200 million in incremental net income for Advanta.

Despite this additional income, by 2009, Advanta was in dire straits. At that point, Plaintiffs proposed a plan to further limit Advanta's credit losses and maximize its income. Plaintiffs proposed to cease funding Advanta's securitization trust, which received the majority of Advanta's credit card receivables. This lack of funding would put the trust into early amortization. Early amortization would cause the amounts owing on the credit card receivables—now converted into bonds—to become due. Advanta would then shut down all existing credit card accounts by canceling charging privileges and purchase the senior bonds back at a discount. According to Plaintiffs, if the bonds were later paid in full, Advanta would make a substantial profit, sufficient to fund its recovery.

Plaintiffs allege that they proposed the plan to the FDIC, because without the FDIC's approval, the plan could not move forward. Plaintiffs further allege that after months of negotiations, the FDIC promised to cooperate with and not oppose the plan. Advanta's board of directors also vetted and approved the plan at a board meeting.

Advanta set the plan in motion by allowing the trust to go into early amortization. Advanta then began buying bonds back at a discounted rate. Advanta also shut down all of its existing credit card accounts by cancelling charging privileges. Plaintiffs allege that, at that point, the FDIC breached its agreement with Plaintiffs to allow the plan to go forward and actively opposed the plan by preventing Advanta from purchasing the bonds back. Plaintiffs

allege that, as a result, Advanta failed, Advanta's parent company declared bankruptcy, and Plaintiffs lost their jobs and suffered financial losses.

The FDIC subsequently initiated an investigation into Advanta's repricing practices. On June 24, 2009, the FDIC and Advanta reached a settlement agreement embodied in a document referred to as the Consent Order. That agreement provides, in part, "In the interest of compromise and settlement, [Advanta], solely for the purpose of proceeding . . . and without admitting or denying any of the unsafe or unsound banking practices or violation of law or regulation as set forth in paragraph 5 of [the Consent Order], hereby consents and agrees to the issuance of the [Consent Order] by the FDIC."[5] Pursuant to the settlement, Advanta paid the FDIC $21 million and the FDIC, in turn, expressly tendered a "release by the FDIC of the Respondent and Bank Parties with respect to the alleged violations of Section 5 identified by the FDIC arising out of the Respondent's . . . acts or practices relating to the Respondent's repricing of credit card accounts."[6] The Consent Order defines the term "Bank Parties" as Advanta "or any director, officer, employee, agent, successor or assign, or other institution-affiliated party."[7]

The FDIC was appointed as receiver for Advanta in March 2010. Following its appointment, FDIC-R notified Plaintiffs that it intended to pursue claims against them on behalf of Advanta. The parties engaged in settlement discussions but were unable to reach an agreement. On June 3, 2013, the FDIC-R informed Plaintiffs that if the parties were unable to reach an understanding, it intended to file suit no later than June 19, 2013. Shortly thereafter, on

---

[5] Docket No. 24 Ex. A, at 3.

[6] *Id.* at 4–5.

[7] *Id.* at 4.

June 14, 2013, FDIC-R sent Plaintiffs a copy of a draft complaint, indicating that it intended to file suit promptly.

Plaintiffs' original complaint acknowledged this background and the imminence of the FDIC-R's suit. In their complaint, Plaintiffs alleged that

> since the FDIC became receiver for Advanta, it has pursued the released repricing claims against Plaintiffs. For example, on June 3, 2013, the FDIC gave Plaintiffs notice that it intend[ed] to file suit against Plaintiffs no later than June 19, 2013. On June 14, 2013, the FDIC sent Plaintiffs' counsel a draft complaint focused on Advanta's 2008 repricing practices and stated that the agency intends to file it imminently.[8]

On June 17, 2013, at 10:42 a.m. (EST), Plaintiffs filed the instant suit. Approximately one hour later, at 11:45 a.m. (EST), the FDIC-R filed suit against Plaintiffs in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Action"). In the Pennsylvania Action, the FDIC-R alleged claims for gross negligence and breaches of fiduciary duty. According to the FDIC-R, Plaintiffs caused Advanta to dramatically increase annual percentage rates on Advanta's credit card customers, causing many of those customers to close their accounts and many others to default. That conduct, FDIC-R alleges, caused in excess of $219 million in losses to Advanta, significantly hastening its downfall.

Since the filing of the instant motions, the parties filed supplemental briefs regarding the ongoing proceedings in the Pennsylvania Action. Those briefs reveal that Plaintiffs filed a motion to stay the Pennsylvania Action that the court denied without prejudice. In addition, the Pennsylvania court consolidated the Pennsylvania Action with two other cases involving these parties for discovery-related hearings. Plaintiffs assert that the other Advanta-related cases have since reached an agreement to settle their claims.

---

[8] Docket No. 2, at 18.

It is apparent from the parties' supplemental filings that the merits of many of the same claims in this action are being actively litigated in the Pennsylvania Action. For example, the parties provided briefing regarding a motion to dismiss filed in the Pennsylvania Action that relates to a statute of limitations defense that Plaintiffs raise in that action. In this action, Plaintiffs similarly seek a declaratory judgment that "the FDIC's claims are barred by the applicable statute of limitations."[9]

In their original complaint, Plaintiffs first cause of action was for breach of contract based on the FDIC-R's pursuit of claims against Plaintiffs in violation of the Consent Order. Plaintiffs also sought declaratory relief related to the same alleged breach. In a second cause of action, Plaintiffs claimed that "[t]he FDIC should be held liable for its wrongful conduct which was the critical and determining factor in the demise of [Advanta] and the resultant massive damage."[10] Plaintiffs did not iterate legal grounds for this alleged wrong to be rectified. On August 1, 2013, Defendant FDIC-C moved to dismiss this case for lack of subject matter jurisdiction or, in the alternative, to transfer the case to the Eastern District of Pennsylvania. Defendant FDIC-C also moved to dismiss the second cause of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

On August 26, 2013, Plaintiffs filed their Amended Complaint. Count I of Plaintiffs' Amended Complaint mirrors Count I of the original complaint—Plaintiffs once more assert that the FDIC breached the Consent Order by bringing the Pennsylvania Action. However, the Amended Complaint also adds two breach-of-contract claims and a claim for promissory

---

[9] Docket No. 24, at 30.

[10] Docket No. 2, at 22.

estoppel based on the FDIC's alleged wrongful actions in opposing Plaintiffs' plan to save Advanta. In response to the Amended Complaint, the FDIC-C and FDIC-R filed separate motions to dismiss. The FDIC-C and FDIC-R also joined in those portions of the FDIC-C's prior motion to dismiss that were not mooted by the filing of Plaintiffs' Amended Complaint.

## II. DISCUSSION

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs' Amended Complaint is an anticipatory filing that should be dismissed or transferred. Defendants also argue that Plaintiffs' pleadings on their face do not show that Counts II–IV of the Amended Complaint are within the Court's jurisdiction. Plaintiffs contend that their suit is not anticipatory because they seek affirmative relief and, in any event, dismissal or transfer of this matter is not appropriate on the facts of this case.

### A. ANTICIPATORY FILING

The parties' arguments as to the proper forum to hear Plaintiffs' claims implicate principles of abstention, comity, and judicial economy. The United States Supreme Court has counseled that

> [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.[11]

---

[11] *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952).

"[A]s between federal district courts . . . the general principle is to avoid duplicative litigation."[12]  As a general rule, "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case."[13]  This

> first-to-file rule is a general case management principle that is not codified by statute or procedural rule.  The rule has its genesis in principles of comity, and essentially counsels that federal courts should decline to hear a case if a previously filed case involving nearly identical parties and issues is being pursued in another federal court.[14]

The first-to-file rule is not applied mechanically.  Rather, "[d]istrict courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand."[15]

One exception to the first-to-file rule is the anticipatory-suit exception.  That exception is meant to discourage a race "'to the courthouse door in an attempt to preempt a later suit in another forum.'"[16]  Courts have held that "'[a] filing in this context is improper where it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose.'"[17]

---

[12] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[13] *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (citing *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328 (10th Cir. 1972)).

[14] *MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 1:05-CV-115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006).

[15] *Id.* (citing *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977)).

[16] *Id.* at *4 (quoting *Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)).

[17] *Id.* (quoting *Ontel Prod.*, 899 F.3d at 1150).

8

In an unpublished decision, *Buzas Baseball, Inc. v. Board of Regents of University System of Georgia*,[18] the Tenth Circuit affirmed a district court's application of the anticipatory-suit exception to dismiss a declaratory-judgment action. The court held that "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction."[19] In *Buzas*, the court recognized and approved the district court's application of the *Wilton/Brillhart* abstention doctrine to dismiss the action.[20] Pursuant to the *Wilton/Brillhart* abstention doctrine a district court has discretion to dismiss or stay an action where solely declaratory relief is sought.[21]

The Court's discretion to decline to hear an anticipatory declaratory-judgment suit pursuant to the *Wilton/Brillhart* abstention doctrine is well settled.[22] On this basis, this Court has repeatedly dismissed declaratory-judgment actions as anticipatory.[23] What is less clear,

---

[18] 189 F.3d 477, 1999 WL 682883 (10th Cir. 1999) (unpublished table decision).

[19] *Id.* at *3.

[20] *Id.* at *1–2.

[21] *See R.R. St. & Co., Inc. v. Mulcan Materials Co.*, 569 F.3d 711, 715 (7th Cir. 2009) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 290 (1995); *Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

[22] *See Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982–83 (10th Cir. 1994) (recognizing trial court's discretion to decline to hear declaratory judgment action and providing factors that court should weigh in reaching its decision).

[23] *See PPS Data, LLC v. Diebold Inc.*, No. 2:12-CV-12-TC, 2012 WL 1884655, at *1 (D. Utah May 22, 2012).

however, is whether pursuant to *Wilton/Brillhart* abstention this Court may dismiss a suit that seeks both declaratory and affirmative relief.

Courts have applied the same reasoning applicable to declaratory-judgment actions to dismiss as anticipatory suits that seek declaratory intermixed with affirmative relief.[24] Indeed, in *PPS Data, LLC v. Diebold Inc.*, this Court applied the same discretion applicable to declaratory judgment actions to dismiss a suit that sought only affirmative relief.[25] In that case, the plaintiff brought suit for patent infringement. The *PPS Data* court recognized that "[m]ost anticipatory filings, by necessity, take the form of declaratory judgments."[26] Nevertheless, it found that under "the procedural posture of the case" and the "facts as a whole," the plaintiff's "actions constitute the sort of procedural fencing that merits an exception to the first-to-file rule."[27]

Despite the foregoing precedent to the contrary, recent Tenth Circuit case law does not appear to support this result. In *United States v. City of Las Cruces*,[28] the Tenth Circuit considered the application of *Wilton/Brillhart* abstention and "drew a distinction between suits seeking declaratory relief and those seeking coercive relief."[29] The court recognized that "'[t]he Federal Declaratory Judgments Act authorizes, but does not compel, federal jurisdiction over

---

[24] *See id.* at *2; *Sutton v. Everest Nat'l Ins. Co.*, No. 07-CV-00425-WYD-BDB, 2007 WL 2438987, at *2–3 (D. Colo. Aug. 23, 2007) (dismissing a suit as anticipatory where the primary relief sought was declaratory and the only claims for affirmative relief were intertwined with the declaratory claims); *Natural Gas Pipeline Co. of Am. v. Union Pac. Res. Co.*, 750 F. Supp. 311, 315 (N.D. Ill. 1990) (dismissing as anticipatory a declaratory judgment action that also sought affirmative relief because plaintiff could assert its claim for affirmative relief by way of counterclaim in the subsequently filed action).

[25] *PPS Data*, 2012 WL 1884655, at *2.

[26] *Id.* at *1 (citation and internal quotation marks omitted).

[27] *Id.* at *1–2.

[28] 289 F.3d 1170 (10th Cir. 2002).

[29] *Id.* at 1181.

suits seeking *declaratory relief.* Thus, *unlike coercive actions*, declaratory actions do not invoke the federal judiciary's virtually unflagging obligation to exercise its jurisdiction.'"[30] The court went on to cite with approval the bright-line approach articulated by the Fifth Circuit in addressing cases involving claims for both declaratory and affirmative relief.[31] Under that approach, "[w]hen an action includes a claim for declaratory relief along with any non-frivolous claim for coercive relief, *Wilton/Brillhart* abstention is completely inapplicable."[32]

On its face, the Tenth Circuit's holding in *Las Cruces* does not appear to square with those cases that have dismissed as anticipatory suits that sought both declaratory and affirmative relief. However, *Las Cruces* is factually distinguishable from those cases in at least one regard. *Las Cruces* involved federal abstention in favor of a parallel state court proceeding. The cases cited by Defendants involve parallel federal proceedings. While this may be viewed as a distinction without a difference, it is arguable that the "'federal judiciary's virtually unflagging obligation to exercise its jurisdiction'"[33] is not disturbed when one federal court abstains from hearing a case in favor of another federal court.

In any event, even if *Las Cruces* forecloses application of the *Wilton/Brillhart* abstention doctrine on the facts of this case, it does not necessarily follow that the first-to-file rule mandates that this Court hear Plaintiffs' claims. As discussed at the outset, the first-to-file rule is a

---

[30] *Id.* (quoting *Sinclair Oil Corp. v. Amoco Prod. Co.*, 982 F.2d 437, 440 (10th Cir. 1992) (internal quotation marks omitted)).

[31] *Id.* at (citing *Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co.*, 214 F.3d 562 (5th Cir. 2000)).

[32] *R.R. St.*, 569 F.3d at 715 (citing *New England Ins. Co. v. Barnett*, 561 F.3d 392, 395 (5th Cir. 2009)).

[33] *Las Cruces*, 289 F.3d at 1181 (quoting *Sinclair Oil Corp.*, 982 F.3d at 440 (internal quotation marks omitted)).

judicially created doctrine that is premised not only on abstention but also on principles of comity and wise judicial administration.

> Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[34]

The Tenth Circuit has previously recognized that "sound judicial administration" at times requires that a court of coordinate jurisdiction "decline consideration of [an] action" until related proceedings are completed.[35] Further, "[i]t is well settled that [a] district court has the power to stay proceedings pending before it and to control its docket for the purpose of 'economy of time and effort for itself, for counsel, and for litigants.'"[36]

Based on these principles, this Court may stay a case pending the completion of related federal proceedings.[37] For example, in *Culbertson v. Midwest Uranium Co.*, the defendant moved to dismiss a second filed action on the grounds that there was a previously filed case proceeding before the United States District Court for the District of Colorado that involved the same parties and subject matter.[38] The defendant in that case moved to dismiss the case as an

---

[34] *Buzas Baseball, Inc.*, 1999 WL 682883, at *2 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)).

[35] *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (granting writ of mandamus ordering district court to decline to transfer subject cases, to "hold those cases in abeyance[,] and to take no further action in any of them until the final termination of the related cases now pending in the Western District of Louisiana, Lakes Charles Division, or until the further order of this court").

[36] *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

[37] *Culberston v. Midwest Uranium Co.*, 132 F. Supp. 678, 679–80 (D. Utah 1955).

[38] *Id.* at 678.

improperly second filed case. The *Culbertson* court first held that it would be procedurally improper to dismiss the action.[39] Nevertheless, after applying principles of "proper judicial administration, economy of time and appropriate deference," the court ordered that the action be stayed pending the resolution of the Colorado proceedings.[40]

Here, it is undisputed that Plaintiffs filed suit in anticipation of the Pennsylvania Action. Plaintiffs argue that their suit is not anticipatory because Defendants have not demonstrated that Plaintiffs engaged in forum shopping. However, the timing and defensive nature of this suit belies this assertion. Plaintiffs filed suit only after receiving and reviewing a draft copy of the complaint later filed by the FDIC-R in the Pennsylvania Action. Plaintiffs were fully aware of Defendants' intention to file suit imminently and merely beat Defendants to the courthouse by sixty-three minutes. This Court has found that similar actions constitute improper procedural fencing.[41] Further, Plaintiffs' assertion that Defendants' decision to file suit in Pennsylvania is out of step with prior FDIC practice does not ameliorate the anticipatory nature of Plaintiffs' own filing. While improper forum shopping is a factor courts have considered in the anticipatory-exception analysis, it is not a prerequisite to a finding that a suit is anticipatory.

Furthermore, the Court finds that it is likely that a resolution of the Pennsylvania Action will have some preclusive effect on important issues in this case. As such, proceeding in this

---

[39] *Id.* at 680.

[40] *Id.*

[41] *See Republic Ins. Co. v. Sinclair Oil Corp.*, 791 F. Supp. 278, 281–82 (D. Utah 1992) (holding that plaintiff could not claim benefit of first-to-file rule where it filed suit during on-going settlement discussions); *ICON Health & Fitness, Inc. v. Beachbody, LLC*, No. 1:11-CV-00024-TC, 2011 WL 1899390, at *3 (D. Utah May 19, 2011) (finding that first-filed suit was anticipatory where filed on the last day to respond to defendant's demand letter that outlined potential causes of action and threatened litigation).

case will result in a duplication of litigation and may result in conflicting results. It is apparent from the relief sought in Plaintiffs' Amended Complaint that a resolution of the Pennsylvania Action will result in a determination of the majority of the issues in this case. All of Plaintiffs' requests for declaratory relief relate to the Pennsylvania Action. Further, Plaintiffs' affirmative claims for relief may either be brought as defenses in the Pennsylvania Action or may be considered by this Court after the completion of that action.

Based on these findings, the Court will exercise its discretion to stay this case pending the completion of the Pennsylvania Action. If, at the termination of the Pennsylvania Action, Plaintiffs feel that their claims for affirmative relief have not been fully vindicated, they may move to reopen this case and pursue those claims that have not been fully addressed in the Pennsylvania Action.

B.     28 U.S.C. § 1404(a)

In the event the Court declines to dismiss this case, Defendants assert that this action should be transferred to the Eastern District of Pennsylvania pursuant to the forum non conveniens doctrine codified at 28 U.S.C. § 1404(a). Plaintiffs contend that transfer of venue is not proper because Defendants cannot meet their burden to prove litigating in this Court would be inconvenient and that the balance of factors favors a transfer of venue.

Pursuant to § 1404(a), "a district court may transfer an action 'for the convenience of parties and witnesses, and in the interest of justice, to any other district or division where it might

have been brought.'"[42]  The following factors are relevant to the Court's consideration of whether to grant a motion to transfer under § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.[43]

      a. *Plaintiffs' Choice of Forum*

The Tenth Circuit has instructed that "unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."[44] "The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district."[45] Here, Plaintiffs are not residents of this forum. Advanta, however, was chartered under Utah law. Further, Plaintiffs allege that Advanta was headquartered out of Utah and a number of the board of directors of Advanta are residents of Utah. On the other hand, it is undisputed that the majority of the officers, directors, and employees of Advanta are residents of Pennsylvania. Based on these facts, the Court finds that this factor does not favor either forum.

      b. *Accessibility of Witnesses and Sources of Proof*

---

[42] *Employer Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting 28 U.S.C. § 1404(a)).

[43] *Id.* (citation and internal quotation marks omitted).

[44] *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (citation and internal quotation marks omitted).

[45] *Bartile Roofs*, 618 F.3d at 1168.

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."[46] To demonstrate inconvenience under this factor, Defendants must "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."[47] Defendants assert that the majority of witnesses in this case are located either in Pennsylvania or in the region near Pennsylvania.  Defendants have not, however, met any of the elements outlined above to demonstrate inconvenience under this factor.  Further, Plaintiffs have come forward with the specific names of witnesses located in Utah, who would provide testimony material to this suit, and who would not be subject to compulsory process in Pennsylvania.  Therefore, the Court finds that this factor weighs against transfer.

      c.    *Cost of Making Necessary Proof*

The parties have not presented argument regarding the relative costs of bringing this suit in Utah as opposed to Pennsylvania.  For this reason, the Court finds that Defendants have failed to meet their burden as to this factor.

      d.    *Congested Dockets*

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[48]  Here, the parties present conflicting evidence as to the difficulties that may arise from congested dockets.  Based on the evidence

---

[46] *Id.* at 1169 (citation and internal quotation marks omitted).

[47] *Id.* (citation and internal quotation marks omitted).

[48] *Id.*

16

presented, the Court finds that this factor does not weigh heavily in favor of either jurisdiction. Accordingly, this factor is neutral.

e. *Conflict of Laws*

"In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."[49] Here, Plaintiffs have provided a supplemental brief in which they attach a document from the Pennsylvania Action in which Defendants allegedly concede that Utah law applies to this dispute. Defendants do not dispute that such is the case. Nonetheless, they contend that this factor should have little weight because there is no conflict between Utah and Pennsylvania law and because the claims at issue primarily involve federal jurisprudence. In light of the claims at issue, the Court finds that this factor weighs slightly against transfer.[50]

f. *Local Courts Determining Local Law*

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."[51] As discussed, it appears to be undisputed that Utah law will apply to this dispute. Thus, this factor weighs against transfer.

g. *Practical Considerations*

Defendants assert that convenience and efficiency favor transferring this case to the Eastern District of Pennsylvania. It appears that Defendants' assertion as to this factor is based on its earlier representation that the majority of witnesses and most of the evidence are located in

---

[49] *Id.* (citing *Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567–68 (10th Cir. 1978)).

[50] *See id.* (holding that this factor "is less significant because federal judges are qualified to apply state law").

[51] *Id.* at 1170.

Pennsylvania. Plaintiffs do not dispute the accuracy of this representation. Therefore, the Court finds that this factor weighs in favor of transfer.

        h.    *Summation*

To meet their burden under § 1404(a), Defendants must show by clear and convincing evidence that a balance of the foregoing factors demonstrate that the existing forum is inconvenient.[52] As outlined above, a majority of the factors are either neutral or weigh against transfer. Accordingly, Defendants have failed to meet their burden and the Court will decline to transfer this case to the Eastern District of Pennsylvania.

### III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant FDIC-C's Motion to Dismiss or Transfer (Docket No. 19) and Second Motion to Dismiss or Transfer (Docket No. 38) are DENIED. It is further

ORDERED that Defendant FDIC-R's Motion to Dismiss or Transfer (Docket No. 36) is DENIED. It is further

ORDERED that this case is hereby STAYED pending the resolution of the Pennsylvania Action. The Clerk of Court is directed to ADMINISTRATIVELY CLOSE this case and remove it from the list of active pending cases. The case may be reopened upon motion by either party, pursuant to the terms of this Order.

---

[52] *See id.* at 1167 n.13.

DATED October 28, 2014

                    BY THE COURT:

                    _____
                    TED STEWART
                    United States District Judge